Good morning, your honors. Ben Coleman from Mr. Neusom. What I'd like to do is start off with the constructive amendment issue that relates to count number one, which was the 641 count. I believe that based on the briefing, the government is essentially conceding that the prosecutor erred in arguing conversion to the jury, and I think they're pretty much conceding that it was error to give the conversion instruction. Their contention is that what would happen in this case, though, was that the judge also instructed on a stealing theory that they proved stealing, and the jury must have necessarily found stealing, so there's no need for a reversal. Tell me the practical, if you're right about that, and you very well may be, he got five years probation, right? Right. So if this, the other conviction, the other count stands, but it's, this one is reversed, what will the practical result of that be? Well, as a result, he'll still have a felony on his record, and he'll still be serving the probation. Five years probation, so it's... Right. So I'd like to get to count number two, then, if I could. Let me go to that one. What I would like to do is start off with an issue that was raised a little bit later in the briefs, and that's the statute of limitations issue as to count two. Well, you know, that argument leaves me a little bit cold. This was a continuing fraud. If it's fraud, it was continuing. Right. And our position is, assuming that's the case, assuming it's a continuing offense for statute of limitations purposes, I'm not conceding that, but let's assume that that's the case. In a very analogous situation, which is the illegal reentry cases, the eight USC 1326 cases... Yeah, but that's completely different. I don't think it's different in that, that offense continues to be committed as long as the alien is illegally in the United States. But there's that word, found. Correct. But I don't see why there should be... They do have that word, found, but theoretically, if the Social Security Administration was on notice, if they knew that this woman had passed away, I think, sort of, equitably, there should be the same argument. And I would note that the government hasn't disputed. In their briefs, the only argument they raised was waiver. They never contended that I was wrong as to the statute of limitations argument. So, to the extent that the court has now addressed an issue that hasn't been briefed before, I would at least like the opportunity to research and brief it. The government, in their brief, never made that argument. So, to the extent that the court is going to reject the statute of limitations argument based on Your Honor's reasoning that the word, found, distinguishes 1326 from the Social Security's fraud, I would at least like the opportunity to brief it because the government never raised it. And I think that the court should just consider that argument waived because they never raised it. Well, maybe they just thought it was so specious that they didn't have to respond. I don't know what they were thinking, but it would have certainly helped if I could have done something in writing and pointed out some cases as to why perhaps that's not a distinguishing factor. So, I think that that argument is waived by the government. The second argument as to count two is the representative payee argument. And I think one of the important issues of principles of statutory construction that I think both sides agree on is that we should presume that Congress did not insert superfluous words into the statute. And what I believe the government's interpretation of the statute does is rendered the words in whose behalf he has applied for or is receiving such payment superfluous. If Congress did not intend for this particular statute just to apply to representative payees, those words would be gone. And instead it would just say, whoever having knowledge of the occurrence of any event affecting the initial or continued right to any payment of any other individual conceals or fails to disclose such event with an intent fraudulently to secure payment either in a greater amount than is due or when no payment is authorized, shall be guilty. But Congress inserted those specific words in there, and I believe that the insertion of those specific words is an indication that the statute only applies to representative payees. And if the Court agrees, I think it's undisputed that Mr. Newsom was not the representative payee for his mother, and therefore there was insufficient evidence, and then count two would go as well. So we would have a reversal on count one, we would have a reversal on count two, and then Mr. Newsom would practically receive some benefit. Now, what you would want would be remand for retrial? Only on count one. I would say that the evidence was insufficient as to count two, so he can't be retried on count two, but he would get a new trial as to count one. So what was count one again? Count one was the 641, the theft of government property count. So then he gets the retrial and they sentence him to jail. You're really helping your client, aren't you? Well, there are two things. Number one is hopefully he'll win his trial. Number two is there may be double jeopardy implications if he were to get a reversal and be convicted, that he then gets jailed a second time. There could be potential double jeopardy issues. I haven't briefed that. But that's only potential. I just want you to think about the consequences. Maybe you're asking for something you don't want. Well, I've discussed this with Mr. Newsom, and he would like a reversal. He would like no felony convictions on his record. That's his main concern right now. And the final issue that I'd like to raise is I just want to talk a little bit about the prosecutor's cross-examination tactics. The government concedes that it was plain error for the prosecutor to ask guilt-assuming hypotheticals of the character witness. And in addition, there were comments that were made by this prosecutor during the cross-examination of Mr. Newsom that I think the government concedes were error and were totally uncalled for. For example, on one occasion the prosecutor said, I take issue with that, Mr. Newsom. The agents testified contrary to that. When you combine those types of errors in the cross-examination of Mr. Newsom with the guilt-assuming hypotheticals, what you have here is essentially a prosecutor who is stating, I know you're lying. I know my case is right. I know my agents are telling the truth. And he's impermissibly vouching for the government's case. And we have a case right here where the government concedes plain error on the guilt-assuming hypotheticals, and they concede that some of the prosecutor's cross-examination of Mr. Newsom was improper as well. And so for that reason also, I think there should be a new trial. That would go to both counts. That would go to both count one and count two. So if the court rejects my constructive amendment argument as to count one, and you reject the sufficiency of the evidence and the statute of limitations as to count two, he would still get a new trial as to both counts based on those errors. Are we looking at this under the plain error standard? I agree. I concede that it's plain error as to the guilt-assuming hypotheticals. And I believe that there were, to some of the questions of Mr. Newsom, there were objections. To others, there weren't. To the extent that the court wants to say it wasn't sufficiently preserved and that it was plain error, I still think we've met the plain error test here. In particular, if you look at some of these cases on prosecutorial cross-examination, for example, Gaston, which is a case we cited, that was a plain error case. So this court is reversing for these types of errors on plain error review. And I think the Weatherspoon case, which we cited in the reply brief, I believe, which just came out fairly recently, which dealt with impermissible prosecutorial vouching, I think there may have been some failures to properly preserve the record in that case as well. So in sum, and I'll reserve the remaining for rebuttal, we're seeking a reversal for a new trial as to count one. We're seeking a reversal with an entry of a judgment of acquittal as to count two. To the extent that the court disagrees with those arguments, we're still seeking a reversal for a new trial as to both counts. You didn't try this case. I didn't try the case. You know, I have an interesting observation. The prosecutor may want to agree with you because didn't the prosecutor in this case want some jail time for this fellow? Do you know on the record the sentencing proceeding? I'm trying to recall. I don't – it wasn't a hotly contested sentencing. I'll put it like that. I don't remember whether the prosecutor was actually asking for jail time or not. You might go back and get it if it's a conviction. Well, there's a pretty big risk. Let me tell you this. And I've seen such a thing happen. Well, the point I'm making is if there is no double jeopardy problem with that happening, and there may be and I would need to research that, I don't know. You're going to be whistling Dixie on double jeopardy. All right. Well, the one thing is, you know, the very well – given the facts of this case, the amount of money that's involved and everything else, the government may not retry it. I don't know what's going to happen, but Mr. Newsom does not want felony convictions on his record. It's hurting his employment opportunities. And he – and given the fact that he's had no problems on probation this entire time that we're up here, I think it's highly – it would be unusual for the judge to impose prison time the second time around if he were to be convicted the second time. Do you want to save some time? Yes, please. Thank you. Good morning. Good morning. May it please the Court, Ilana Artsin on behalf of the United States. Pull the mic down just a little. Your Honor, let me begin with that claim that affects both counts pertaining to cross-examination of the character witnesses. The parties agree that the questions were improper. The question is whether there was an effect on defendant's substantial rights and whether the fourth prong is met here. This case is exactly like Schrader and the 11th Circuit case Guzman that Schrader relied on, as well as a recent 8th Circuit case Parani. In all of those cases, the witness essentially answered, as did the witness here, that those facts would not change my opinion. And that's what the witness consistently said here. It would surprise me. It would surprise me. It would surprise me. Is this a plain error issue? This is a plain error issue. It's pretty obvious it's not plain error. That's the government's point. It's not plain error because essentially the witness's answers bolstered the defendant's case. And as this Court pointed out in Schrader, there's every reason to believe that the defense made a tactical decision not to object precisely because that evidence did bolster the defense case. I'm kind of curious about what happened here. You tell us and quite candidly still these were improper questions. We have later on in the case the prosecutor arguing a theory that he knew was not properly before the jury, this conversion theory. This is not the kind of thing we usually see from the government. What happened here? Your Honor, obviously I wasn't the prosecutor who tried this case. Right. And it is true that there were errors made. But ultimately the question that this Court has to decide is, do those errors mean that the defendant did not get a fair trial? And looking at the proudest performance we've seen from the U.S. Attorney's Office. I agree, Your Honor, that this is not the proudest performance. But nonetheless, the question that this Court has to decide is, does this performance require reversal? And in order to do that, we have to examine whether there really was error, whether that was plain error, and look at the prejudice. With respect to the cross-examination of the defendant, that cross-examination was not improper. This is not the same sort of situation as in Combs and Guestin and Sanchez. What those cases stand for is the proposition that it is improper to ask one witness to opine that another witness is lying. And the reason for that is essentially that it is not the role of a particular witness to make that determination. That's the jury's role. That is not what happened here at all. What happened here is that the prosecutor asked questions concerning documentary evidence. The government had a particular interpretation of that documentary evidence, and the defendant claimed that that documentary evidence had a different interpretation. And those are perfectly fair questions, as the cases that we've cited in our brief indicate. And we've cited some cases at pages 46 and 47 of our brief from other circuits, as well as the De Quino case from this circuit, which really differentiate between the situation of point blank asking, well, if a government witness testified contrary to you, are you saying that that witness lied? That's improper. But to say, well, are you contesting the documents? That's a perfectly fair question, and that's what happened here. If you look at, for example, page 196 of the ER, the questions were, well, did you hear the testimony that the Social Security records show that the change to direct deposit didn't occur until 1996? And the defendant says, I heard the testimony, but that was not the case. Question. So the Social Security records are wrong. That's a fair question. Again, at page 197, there's nothing in the Social Security records to show what you're stating. And the defendant says, but according to the bank statements, there is. These are fair questions about the documentary evidence, and therefore, there was no error there. Conceitedly, the prosecutor did make two comments that may have been inappropriate, but those were not questions. They were not ever answered. One of them was stricken, and if they were argumentative, the jury was instructed to disregard statements that were stricken, to disregard questions, and to disregard statements of counsel. So that is no basis for a reversal. With respect to the claims specifically concerning Count 1 on constructive amendment of the indictment, on this record, there is simply not a realistic likelihood that the defendant was convicted for a crime that was not charged. The district court, in its instructions to the jury on Count 1 regarding the theft of property, only instructed on stealing. At page 323 of the ER, there are three elements. First, the defendant stole money or property with the intention of depriving the owner of the use or benefit. Second, the money belonged to the United States. And third, the value of money was more than $1,000. So the jury was only instructed on the theory of stealing. They were also given. The judge also explained that conversion is in the statute. And that conversion is something different from stealing. And then your colleague argued that this was conversion. Well, the prosecutor didn't directly argue that it was conversion. There were some references that the prosecutor made alternatively to stealing or conversion. There wasn't a portion of the argument where the prosecutor specifically argued this was a conversion and you should convict on that theory. The reason the defense objected to a definition of conversion was that all the evidence pointed to stealing. And that is exactly what is true in this case. There was no evidence here that the defendant lawfully acquired these benefits, that there was any authorization for the benefits. The mother died in December of 1993, which is the earliest that the record shows the payments could have been made. So they were never authorized. There couldn't have been a lawful acquisition, which was then converted. The government's theory, and it seems that the conviction on count two would support that, would be these payments were consistently unauthorized. There was a stealing. I'm referring to the closing argument of Mr. Webb where he mentions conversion several times, and then he says, now, ladies and gentlemen, the plain facts support the simple elements of the government's case. These elements, again, are straightforward. That defendant stole and only converted the money or property. And I agree that there were points in the closing and in the rebuttal argument where the prosecutor alternatively referred to conversion or stealing. But the evidence that was presented at trial and that was discussed here all supported a theory of stealing. It was neither the government's nor the defendant's theory that these benefits were ever lawfully acquired. The government's theory was that they were never lawfully acquired because the defendant had fraudulently failed to disclose the mother's death and subsequently received the benefits. That was the theory of count two on which the jury convicted. It sounds to me like your colleague didn't know the difference between stealing and conversion. And that is certainly possible, but ultimately the inquiry that this court has to make is whether there's a realistic likelihood on these facts and these instructions that the jury convicted on a conversion theory. And the facts in terms of the evidence at trial and the instruction that was given by the district court, which referred only to stealing, simply does not create a realistic possibility that there was a conviction here based on a conversion theory only. Let me ask you, Ms. Archin, the same question I asked Mr. Coleman, the practicality of this. If we were reversed on count one, what would happen? It goes back and we try it or? Your Honor, I can't really speak for sure to whether we would retry the defendant on count one. But if the conviction on count two were to stand, certainly a sentence could be imposed on that conviction. And whether that would be the same sentence, in all honesty, I don't recall exactly what sentencing argument the government made. I hope that answers your question. Let me briefly turn. Your Honor, the government hasn't cross-appealed on the sentence. No, and the sentence is not at issue. Briefly then, turning to count two, and there are two claims that go specifically to count two. One is basically whether the statute must be interpreted to sort of have an overlay that only representative payees are covered under the statute. And essentially what the government responds is that the defense is calling on the rule of lenity. And the rule of lenity simply doesn't apply here because it applies only if the statute is truly ambiguous. This statute is not truly ambiguous simply because there is a possible other or narrowing construction. If Congress really intended to limit this situation solely to representative payees, it would have said that in the statute. Instead, it did create some other limiting language, the on behalf of language, which probably in most cases would refer to a representative payee, but it can also cover broader situations like that here. If you took out that language entirely, then the coverage would be far broader than what we have because the defendant suggests that essentially any person who has knowledge that some other party may be fraudulently receiving benefits can be liable for not disclosing that. And certainly that's not Congress's intent. Is this a plain error or preserved error on the record? Again, that was a plain error. That issue was not raised below either. And finally, with respect to the statute. Your time is up, Ms. Artson. Thank you very much. Mr. Coleman, back to you for rebuttal. Thank you, Ms. Artson. On that last issue, I believe the representative payee issue was preserved. Now, this specific argument wasn't raised, but a Rule 29 motion was made. It was a general Rule 29 motion, and I believe that sufficiently preserves the issue. Rule 29, I'm from the Eighth Circuit. Judgment of acquittal. There was a motion made for a judgment of acquittal, a timely motion, and I believe that preserves under Ninth Circuit law this particular issue, which is a sufficiency of the evidence claimed. So I think that that issue is preserved. On that particular issue also, we have cited the Benny case from this court, which basically says that for fraud, which there is a requirement of fraudulent intent here, that generally to be convicted on a failure to disclose theory for fraud, there generally has to be a statutory obligation to make the disclosure. And that's why that reinforces our argument that this particular statute only applies to representative payees, because only those people that have a statutory duty to disclose can be convicted of fraud. So that enhances our argument as to the representative payees. And the only other thing I did want to say was with respect to the plain error on the cross-examination, again, it's a cumulative effect, and when you have a prosecutor saying, while the defendant is testifying to his own innocence, even though their testimony referring to the agents you heard here indicates that's not true, he's making flat-out statements in front of the jury that the defendant is lying. And that's not the type of behavior that this Court should tolerate. Thank you, Mr. Coleman. Thank you. The case has started. You're submitted.
judges: Bright , B. Fletcher, Silverman